UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 25th day of May, two thousand eighteen.

Present:      ROSEMARY S. POOLER,
              REENA RAGGI,
              CHRISTOPHER F. DRONEY,
                     *Circuit Judges*.

_____

IN RE: SABINE OIL & GAS CORPORATION,

                     *Debtor*.

_____

SABINE OIL & GAS CORPORATION,

                     *Plaintiff-Appellee*,

              v.                                          17-1026

NORDHEIM EAGLE FORD GATHERING, LLC,

                     *Defendant-Appellant*.[1]

_____

Appearing for Appellant:      Yvonne Y. Ho, Bracewell LLP (Robert G. Burns, *on the brief*)
                              Houston, TX

---

[1] The Clerk of Court is respectfully directed to amend the caption as above.

Thomas R. Phillips, Madelein R. Dwertman, Macey Reasoner Stokes, Baker Botts LLP, Houston, TX (*on the brief*)

Appearing for Appellee:        Erin E. Murphy, Kirkland & Ellis, LLP (Christopher Landau, Anna G. Rotman, Kenneth A. Young, James H.M. Sprayregen, Ryan Blaine Bennett, Jeremy M. Feigenbaum, *on the brief*), Washington, D.C.

Amicus Curiae:        James J. Proszek, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK and Craig Rainey, Tulsa, OK, *amicus curiae GPA Midstream Association in support of Defendant-Appellant Nordheim Eagle Ford Gathering, LLC*

James E. Mann, Duggins Wren Mann & Romero, LLP, Austin, TX, *amicus curiae Texas Pipeline Association in support of Defendant-Appellant Nordheim Eagle Ford Gathering, LLC*

Appeal from the United States District Court for the Southern District of New York (Rakoff, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Appellant Nordheim Eagle Ford Gathering, LLC appeals from the March 13, 2017 judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*), affirming the orders of the United States Bankruptcy Court for the Southern District of New York (Chapman, *Bankr. J.*) authorizing the rejection of agreements between appellee Sabine Oil & Gas Corporation and Nordheim under 11 U.S.C. § 365(a). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Bankruptcy court decisions are subject to appellate review in the first instance by the district court, pursuant to the statutory scheme articulated in 28 U.S.C. § 158. The same section of the code grants jurisdiction to the circuit courts to hear appeals from the orders of the district court. 28 U.S.C. § 158(d). Because this scheme requires district courts to operate as appellate courts, we engage in plenary, or de novo, review of the district court decision. *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir. 1990). We then apply the same standard of review employed by the district court to the decision of the bankruptcy court. Accordingly, "[w]e review the bankruptcy court's factual determinations for clear error and its legal conclusions *de novo*." *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006).

Nordheim argues on appeal that the district court and the bankruptcy court each erred by misconstruing the relevant agreements as "personal obligations" as opposed to "real covenants that run with the land." Appellant's Br. at 25. This distinction is significant, because if the agreements constitute real covenants that run with the land they are not "executory contracts" and the Bankruptcy Court does not have authority to approve their rejection under 11 U.S.C. § 365(a). *See Gouvela v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994) (observing that "[w]hile distinguishing between contracts and property rights might seem elusive," it is possible for a

court to determine that the terms of the agreement create a personal obligation, as opposed to "an interest in real property" and when the agreement is determined to be a personal obligation as opposed to an interest in real property, "§ 365 of the bankruptcy code is inapplicable").

The bankruptcy court and the district court each reviewed the relevant agreements under Texas state law, which was selected in the choice of law provision in each agreement. In addition to the forum selection clause, bankruptcy courts must apply state law when reviewing questions of property law. *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

The parties agree that for a real covenant to run with the land under Texas law, it must: 1) touch and concern the land, 2) relate to a thing in existence or specifically bind the parties and their assigns, 3) be intended by the original parties to run with the land; and 4) the successor to the burden must have notice. *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987) (citing *Westland Oil Devel. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 910–11 (Tex.1982)). The parties do not dispute that the agreement satisfies prongs 2-4, but disagree on whether the agreement "touches and concerns" the land and whether the legal test includes a requirement of horizontal privity.

We need not determine whether the agreement "touches and concerns" the land, because we find that Texas still requires horizontal privity and that it was not satisfied in this case. The bankruptcy court declined to decide whether horizontal privity remains a requirement under Texas law, but concluded that even if it were, the requirement was not met by Nordheim. *In re Sabine*, 550 B.R. 59, 68-70 (Bankr. S.D.N.Y. 2016).

In order for the parties to the original agreement to have been in horizontal privity with one another, there must have been some common interest in the land other than the purported covenant itself at the time it was executed. "'Horizontal privity' typically exists when the original covenanting parties make their covenant in connection with the conveyance of an estate in fee from one of the parties to the other. The covenant and the conveyance must be made at the same time, although no continuing mutual relationship to the affected land is needed." 9 Powell on Real Property § 60.04(3)(c)(iii). The trend across the country is towards abolition of the horizontal privity requirement, as reflected in the Restatement (Third) of Property, which has eliminated the requirement. See Restatement (Third) of Property (Servitudes) § 2.4. The parties dispute whether Texas has followed this trend.

The bankruptcy court found that horizontal privity remains a requirement under Texas law and that the agreement between Sabine and Nordheim failed to satisfy that requirement.[2] *In re Sabine*, 550 B.R. at 68-70. On the first point, the bankruptcy court observed that

---

[2] The district court did not reach the issue of horizontal privity because it determined that the agreement failed to "touch and concern" the land. *In re Sabine*, 567 B.R. 869, 877 n. 5 (S.D.N.Y. 2017).

[N]either [party] has identified any authority affirmatively indicating that horizontal privity of estate between the covenanting parties is no longer a requirement for a covenant to run with the land. Therefore, absent any actual authority to the contrary, the Court considers horizontal privity of estate in its analysis under Texas law.

*Id.* at 68. When applying state law, we are tasked with applying the law of the state as it exists. It would be improper for us to read a traditional requirement of real covenants out of Texas state law when there is no Texas law instructing courts to do so. *See SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 213 (S.D.N.Y. 2009) ("Binding precedent is not established by silence."). Accordingly, we agree with the bankruptcy court and find that horizontal privity remains a requirement of Texas real covenants. *See Davis v. Vidal*, 151 S.W. 290, 291 (Tex. 1912) (requiring privity of estate "between the original lessor and the undertenant"); *Flanniken v. Neal*, 4 S.W. 212, 214-15 (Tex. 1887) (concluding covenant ran with land because it "entered into and formed a part or parcel of the contract by which, and of the consideration for which, the grant of land was made."); *see also Westland*, 637 S.W.2d at 910-11 (explaining that required privity between parties "must be a mutual or successive relationship to the same rights of property").

Nordheim argues that horizontal privity of estate is established through the separate agreements conveying the pipeline easement and a separate parcel of land. The bankruptcy court determined that this separate conveyance was insufficient to establish horizontal privity of estate. *In re Sabine*, 550 B.R. at 68-69. The bankruptcy court explained that Nordheim failed to identify

any authority for the proposition that the horizontal privity of estate prong is satisfied if the covenanting parties have horizontal privity of estate only with respect to property separate from the property burdened by the covenant at issue. Instead, Nordheim . . . argue[s], without support, that horizontal privity of estate exists through the conveyance of any land 'involved' in the covenants at issue. Again, this overly broad conception of the horizontal privity of estate requirement is inconsistent with the historical paradigm as well as the very caselaw Nordheim . . . cite[s].

*Id.* at 69. We agree with the bankruptcy court that this separate conveyance cannot establish horizontal privity of estate between the parties. Indeed, both cases cited by Nordheim are cases in which Texas courts found there was no privity of estate. In *Panhandle & S.F. Ry. Co. v. Wiggins*, the Texas Court of Appeals explicitly held that "[t]here is no contention that any portion of the land involved . . . was conveyed by the contract or otherwise, and there was, therefore, no privity of estate between the parties." 161 S.W.2d 501, 505 (Tex. App. 1942); *see also Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App. 1997) ("For a covenant to run with the land at law, and so be enforceable at law so as to bind successors in title, the covenant must be made between parties who are in privity of estate at the time the covenant is made, and must be contained in a grant of the land or in a grant of some property interest in the land."). The Texas Appeals Court case *Clear Lake Apartment, Inc. v. Clear Lake Utils. Co.*, is on point. 537 S.W.2d 48 (Tex. App. 1976). In that case, the Texas court held that the contract at issue "did not create any privity of estate: it was not part of any transaction conveying the land involved, or any easement in it, between the parties." *Id.* at 51. The contract at issue in *Clear Lake* involved agreements to construct facilities "to serve Said

4

Land in existing easements adjoining Said Land." *Id*. Regarding the horizontal privity requirement, there is no meaningful legal distinction between the contract in *Clear Lake* and the one at issue here. Neither contract conveyed a property interest in subject land (in this case, the mineral estate). Accordingly, both fail to establish horizontal privity of estate and therefore both fail to create a real covenant.

Nordheim argues in the alternative that even if the agreements did not create real covenants, they created equitable servitudes that nonetheless create a property interest that cannot be rejected under 11 U.S.C. § 365. The parties rely on the same case for the definition of equitable servitudes under Texas law:

> [A] covenant that does not technically run with the land can still bind successors to the burdened land as an equitable servitude if: (1) the successor to the burdened land took its interest with notice of the restriction, (2) the covenant limits the use of the burdened land, and (3) the covenant benefits the land of the party seeking to enforce it.

*Reagan Nat. Advert. of Austin, Inc. v. Capital Outdoors, Inc.*, 96 S.W. 3d 490, 495 (Tex. App. 2002) (internal citations omitted).

There is simply no colorable argument that these agreements created an equitable servitude because there is no benefit to real property of Nordheim. It is Nordheim as an entity— not its real property—that is benefited by the agreement. The district court offered the same analysis when it held there was no equitable servitude created by the agreements. *In re Sabine*, 567 B.R. 869, 877 (S.D.N.Y. 2017) ("[T]he Agreements benefit only appellants, not their land. Through the Agreements, appellants are entitled to receive fees for processing delivered gas and condensate, regardless of where that process takes place, and thus the Agreements themselves do not render more valuable the land on which appellants have located their processing facilities.").

We have considered the remainder of Nordheim's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

5